IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| OPUS EAST, L.L.C., | ) | Case No. 09-12261 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

Proposed Response Deadline: October 14, 2009 at 2:00 p.m. (ET)
Proposed Hearing Date: October 14, 2009 at 2:00 p.m. (ET)

# MOTION OF THE CHAPTER 7 TRUSTEE, PURSUANT TO SECTIONS 363, 365, AND 725 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, FOR (I) AUTHORIZATION TO SELL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES, (II) AUTHORIZATION TO ASSIGN LEASES OF NON-RESIDENTIAL REAL PROPERTY, AND (III) AUTHORIZATION AND APPROVAL OF THE SETTLEMENT AGREEMENT BY AND AMONG ST. JOHN PROPERTIES, INC. AND THE TRUSTEE

Jeoffrey L. Burtch, as the duly appointed Chapter 7 trustee (the "Trustee") for the estates of Opus East, L.L.C. ("Opus East"), 100 M ST. SE, L.L.C., Mercer Corporate Center, L.L.C., Apple Valley II, L.L.C., APG I, L.L.C. ("APG I") and APG II, L.L.C. ("APG II"), the debtors in the above-captioned cases (the "Debtors"), respectfully represents as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion (the "Motion") is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein are sections 105, 363 and 365 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 9019, Federal; Rule of Bankruptcy Procedure.

DB02:8793273.3    068633.1001

## Background

2. On July 1, 2009 (the "Petition Date"), voluntary petitions were filed by the Debtors for relief pursuant to chapter 7 of the Bankruptcy Code.

3. The United States Trustee appointed Jeoffrey L. Burtch, Esq. as the chapter 7 trustee pursuant to section 701 of the Bankruptcy Code.

4. On August 24, 2009, the Court entered an order authorizing the joint administration of the Debtors' cases for procedural purposes only [Docket No. 73].

5. During the pre petition period, APG Master Developer, L.L.C. ("APG Master Developer"), a wholly owned affiliate of Debtor, Opus East, held development rights to the 400-acre parcel pursuant to a master development agreement and certain leases with the United States Department of the Army (the "Army"). The so called GATE project is a proposed 400-acre office and technology park located within the Aberdeen Proving Ground military installation in Harford County, Maryland (the "APG Property").

6. This arrangement with the Army is a relatively new concept styled an Enhanced Use Lease ("EUL"). As of the Petition Date, the GATE was in the early stages of development by the Debtors.

7. On June 18, 2009, Opus East, APG Master Developer and GATE APG, LLC (an affiliate of St. John Properties, Inc. ("SJP")) entered into an Assignment, Assumption, Bill of Sale and Consent (the "Assignment of Development Rights") granting and conveying to GATE APG, LLC the rights to lease and develop certain property owned by the Army at the APG Property, pursuant to the Master Agreement previously entered into between Opus East (which was assigned to APG Master Developer) and the Army (the "Master Agreement"). In exchange, Opus East and APG Master Developer received $150,000.00, with $100,000.00 more

2

to be paid. This second payment was timely tendered to, but not accepted by, the Trustee. The Assignment of Development Rights was approved by the Department of the Army. The development rights referenced therein shall be referred to as the "Development Rights."

8. Debtor, APG I, is a special purpose entity formed and owned 100% by Opus East to develop Land Bay F, Lot 1 ("Lot 1"), in the GATE Project. APG I is the owner of the leasehold interest in Lot 1. Although some site work had been completed as of the Petition Date, it remains an undeveloped lot. Opus had prepared plans to construct a three story building on this site and had ordered precast concrete and structural steel from fabricator-vendors prior to the petition date.

9. Debtor, APG II, is a special purpose entity formed and owned 100% by Opus East to develop Land Bay F, Lot 2 ("Lot 2") in the GATE. APG II is improved with a 59,977 square foot building known as the CACI Building (the "CACI Building"), that was substantially leased as of the Petition Date. APG II is the owner of the leasehold interest in Lot 2 and also owns the CACI Building. The leasehold interest in Lot 2 includes such leasehold owner's rights to any excess rent paid by the Army under its sublease of a portion of the CACI Building from CACI, Inc. ("CACI"), a provider of professional services and IT solutions for the defense, intelligence, homeland security, and federal civilian government arenas.

10. Fifth Third Bank ("Fifth Third") served as the secured lender with respect to APG II and the development of Lot 2. Fifth Third calculates the indebtedness with respect to APG II to be approximately $9.9 million.

11. Fifth Third also claims approximately $1 million of additional indebtedness pursuant to a loan made to Opus East and guaranteed by APG I.

12. The Debtors also hold ownership interests in the personal property described as follows, subject to any amounts due and owing to counterparties in connection therewith (the "Personal Property"):

    (a)    Plans: Construction drawings, architectural and engineering plans, specifications and reports (including but not limited to environmental reports) related to the three story office building which was to be constructed on Land Bay F – Lot 1 adjacent to the land, including but not limited to:

        i) Construction Drawings (Precast Design, Plumbing Design, HVAC Design, Sprinkler Design, Electrical Design, Civil Design, Architectural Design, Opus A&E Drawings, Structural Engineering);

        ii) Work product resulting from mechanical scope, electrical scope and government consultation;

        iii) Engineering prepared by CNA and Frederick Ward Associated, including but not limited to, Erosion and Sediment Control Plans, Forest Conservation Plans, and Concept Plans;

        iv) Engineering related to road design;

        v) Engineering related to wetland studies; and

        vi) Phase I Environmental Study and any subsequent Phase II Study.

DB02:8793273.3　　　　068633.1001

(b) <u>Steel</u>: The steel purchased for the three story office building which was to be constructed on Lot 1 adjacent to the land, consisting of approximately 290 tons of steel, fabricated by Strait Steel, Inc.;

(c) <u>Concrete</u>: The precast concrete purchased for the three story office building which was to be constructed on Lot 1 adjacent to the land provided by The Shockey Precast Group.

13. Since the Petition Date, the Trustee has been working cooperatively with the Army and Fifth Third to address issues necessary to satisfy the Army's requirements under the leases and, at the same time, to maximize the value of the APG I and APG II assets for their respective estates. Significantly, pursuant to the recommendations of the Department of Defense Base Realignment And Closure (BRAC) commission, the installation will be the receiving host for multiple activities being relocated from closing installations. These BRAC realignments place significant temporal and logistical constraints on the APG garrison to ready the post for its expanded mission.

14. Since the Petition Date, the Trustee has been actively working to market APG I and APG II for sale in a manner reasonably calculated to achieve a fair price under the expedited time-frame that would be agreeable to Fifth Third and the Army. The Trustee's and his professionals efforts in this regard include:

(a) Attending multiple meetings with the Army to obtain an appreciation for the project;

5
DB02:8793273.3                                                                                                       068633.1001

(b) Conducting site inspections of the APG Property and meeting with the Army and certain of its contractors to discuss their objectives and requirements with respect to the CACI Building;

(c) Attending a meeting with the Army Corps of Engineers in Baltimore, Maryland, to discuss issues relating to bidder qualifications and other project parameters;

(d) Identifying and soliciting interest from potential purchasers;

(e) Compiling extensive due diligence materials and providing them to potential bidders;

(f) Setting an initial deadline for submissions of non-binding letters of intent by interested bidders;

(g) Reviewing initial letters of intent submitted by five (5) interested bidders that suggest a preliminary value (by four of the five bidders) that is well in excess of the indebtedness to Fifth Third;

(h) Coordinating with the Army for an "Open House/Industry Day" site visit by interested bidders; and

(i) Negotiating with both Fifth Third and the Army a proposed schedule that would set deadlines for the completion of due diligence by interested bidders, and schedule bidding and sale

6
DB02:8793273.3                                                                                                                    068633.1001

procedures that are calculated to complete the sales of at least APG I and APG II on an expedited basis.

15. Based upon his own independent investigation of the events surrounding the prepetition transfer of the Development Rights to SJP, the Trustee has informally challenged the validity of the Assignment of Development Rights, which SJP disputes. However, given the complexity of the allegations, the projected cost of litigation and the desire of the parties – including the Army – for a prompt and final resolution of the issues and the smooth initiation of the construction and development activities on post, the Trustee and SJP have reached an agreement pursuant to which SJP and the Trustee will settle the matter as part of a global disposition of the estates' interests in the APG assets. The agreement contemplated that SJP would serve as a stalking horse bidder for the APG assets of the Debtors.

16. By this motion, the Trustee seeks approval of the assumption and assignment of leasehold interests, the transfer of certain real interests and personal property of the estates pursuant to sections 363(b), 365(f) and 725 of the Bankruptcy Code, and the settlement of potential estate claims against SJP incident to the pre-petition transfer of the Development Rights pursuant to Bankruptcy Rule 9019, all in accordance with of a Letter of Intent dated October 6, 2009 (the "Letter of Intent"), between the Trustee as Seller and SJP as Buyer. A true and correct copy of that Letter of Intent is attached hereto as Exhibit A and incorporated by reference as if set forth in full herein.

### Description of Property to Be Sold

17. Pursuant to the Letter of Intent, the Trustee seeks to assume and assign or otherwise transfer (i) the leasehold interests in Lots 1 and 2, (ii) the rights of the Trustee under that certain *Payment In Lieu Of Taxes* ("PILOT") Agreement applicable to Lots 1 and 2, (iii) the

7

CACI Building, and (iv) to assign all of the Debtors' rights in the Personal Property (including delivery of all Personal Property in the Trustee's possession) (collectively, the "Property").

## The Agreement

18. In summary, the Trustee will transfer all of the Debtors' rights, title and interest in the Property to SJP for a price of $14,900,000.00 (the "Purchase Price"), subject to certain adjustments for amounts previously paid in consideration for the Assignment of Development Rights and certain fees due to eth Army associated with the sale of Debtors' interests in the Property. The Trustee will also (i) release SJP and its affiliates from any and all claims the Trustee, the Debtors and their affiliates have or may have relating to the Assignment of Development Rights, the Master Agreement and the Development Rights, (ii) agree not to challenge the Assignment of Development Rights, and (iii) shall convey to GATE APG, LLC, free and clear of all liens and encumbrances, any rights the Trustee and the Debtors have or may have in and to any such Development Rights relating to APG Property (collectively, the "Settlement").

19. Due to the provisions of leases between Army and the estates and the provisions of Federal Anti-Assignment Act, 41 U.S.C. §15, the Settlement and the proposed transfer of assets to SJP are predicated upon the consent of the Army. Should the Army withhold its consent, the value of this transaction could be substantially diminished.

20. The Trustee is proposing a highly expedited disposition of these assets. The expediency is predicated upon the enunciated need of the successful bidder to commence construction of a building on Lot 1 not later than 15 October 2009 in order to permit the proposed tenant, The Raytheon Company, to occupy the new structure in September 2010. This

schedule is in turn dictated by the provisions of Raytheon's present leases that necessitate its surrender of it present quarters by September 2010.

21. The Trustee has been advised by the Army that the Army believes the presence of Raytheon – a major defense contractor- as the tenant of the proposed building on Lot 1, within the APG boundaries, to be highly desirable and consistent with installation's mission. Due to the potential "veto" authority given the Army by the Anti-Assignment statute, the Trustee has accorded great weigh to the Army's concerns when evaluating this transaction.

22. The Trustee did not became cognizant of the immediacy of the Raytheon involvement in this matter until after the Trustee, in discussions with the Army and Fifth Third had reached a stipulated timetable to auction the APG assets, with a targeted closing date of 20 November 2009, as was reported to this Court during the 23 September 2009 hearing.

23. When apprised of the need for a 15 October ground breaking, the Trustee entered into even more expedited discussions with the Army, with Fifth Third , with Raytheon and with a number of potential bidders in order to craft an auction schedule and procedure that would permit the satisfaction of the interests of the parties, and yield the highest and best value to the estates from the APG assets.

24. In conjunction with the Army, an "Open House/Industry Day" was conducted on site on Friday, 2 October 2009, to which all prospective bidders were invited. The purpose of this meeting was to permit the prospective bidders to be briefed on the assets, to inspect the site, to question representatives of the Army and the Trustee regarding the project.

25. In order to meet the goal of a 15 October 2009 groundbreaking, the Trustee proposed the following schedule at the Open House

9

a. Prior to the open house, at the Trustee's invitation, SJP had tendered a bid of $14.1 million for the aggregate assets, which bid the Trustee selected as the "stalking horse" bid.

b. Hard competing bids were to be transmitted to the Trustee by Monday, 5 October 2009 at 5 pm (bids could be made for the aggregate assets or for particular component parts, e.g.., Lot 1 but not Lot 2, etc.);

b. If any qualified competing bids were received an auction would be conducted on Wednesday, 7 October 2009 at 10 am;

c. Bids must provide for closing and ground breaking on the Lot 1 constuction not latter than 15 October 2009;

d. The initial overbid must be $200,000;

e. The incremental bid amount would be $100,000;

f. Bids would be non-contingent.

g. A single qualifying competing bidder presented itself and after auction, SJP's bid of $14.9 million was selected as the highest and best bid.

26. In consideration for its serving as the stalking horse bidder and to resolve the dispute over the prepetition transfer of Development Rights, the Trustee agreed to seek Court approval to compromise and release estates' claims against SJP. If SJP was the successful bidder the release would be deemed to be part of the consideration for the deal. If a competing bidder was the winning bidder, the release would be in nature of a stalking horse bid protection. SJP would execute a mutual release of all claims it may have against the Estates.

27. Given the complexity and nature of the Trustee's claims against SJP, the unique aspects of the APG development project and SJP's prior relationships with the Army and

DB02:8793273.3 068633.1001

Raytheon, the Trustee believes that including a release of potential causes of action helped to maximize the value of the auction to the unsecured creditors and is in the best interests of the estates.

28. SJP is not an "insider" of the Debtors as that term is defined in 11 U.S.C. § 101(13) and this sale has been negotiated without collusion, at arm's length and in good faith by both parties.

29. Notwithstanding the speed with which this matter has been pursued, the Trustee believes and therefore avers that he has fully exposed the APG assets to the marketplace and that further marketing would be highly unlikely to yield a larger cash recovery for the estates, particularly should the potential of the Raytheon lease be lost or should the Army decide that further delay would be contrary to its goals. In addition, Fifth Third, the secured lender, has not objected to the procedure.

30. Accordingly, the Trustee requests the entry of an order, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Order</u>"), which would:

    (a) Pursuant to Bankruptcy Code sections 363(b), 365(f), and 725, approve the terms and conditions of the Letter of Intent, the proposed sale of the Property to the Buyer (including the assignment of the leasehold interests in Lots 1 and 2 to the Buyer);

    (b) Pursuant to 11 U.S.C. § 363(f), make the conveyance free and clear of all liens and encumbrances of any nature whatsoever, with any liens or encumbrances to attach to the proceeds of sale to the same extent and priority that they had against the Property being conveyed;

(c) Pursuant to Bankruptcy Rule 9019, authorize and approve the Settlement and release of potential causes of actions against SJP; and

(d) Determine that the transaction contemplated by the Letter of Intent is undertaken by the Buyer in good faith, and as such the Buyer is entitled to the full protections contemplated in section 363(m) of the Bankruptcy Code.

### The Proposed Sale Satisfies The Applicable Standards For Sales Of Property Under Section 363

31. The Trustee respectfully submits that the proposed sale of the Property satisfies the requirements of section 363 of the Bankruptcy Code. Under section 363(b) of the Bankruptcy Code, "[t]he trustee, after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

32. Where a trustee seeks to use assets of the estate pursuant to section 363 of the Bankruptcy Code, the trustee's good faith business judgment regarding the proposed transaction should not be disturbed absent a showing that the transaction constitutes an abuse of discretion or is contrary to the interests of the creditors. In re Thrifty Liquors, Inc., 26 B.R. 26, 28 (Bankr. D. Mass. 1982); In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3rd Cir. 1986). The court in Abbots Dairies stressed two factors which a trustee must prove in order to obtain court authorization of a use of property of the estate pursuant to section 363. First, the transaction must result from the exercise of the trustee's sound business judgment and second, the trustee must be acting in "good faith." Id. at 150. For reasons set forth herein, the

Trustee believes that (1) entry into the Letter of Intent proposed herein will inure to the benefit of the Debtors' estates and creditors, and (2) the Trustee is acting in good faith.

## The Trustee Intends to Sell the Assets in a Manner Consistent with His Obligations under Section 725

33. Section 725 of the Bankruptcy Code states "[t]he trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title." Thus, section 725 specifically contemplates that the Trustee may sell property of the estate encumbered by a lien. Nevertheless, the trustee should not sell property under section 725 when all the equity is encumbered or if there will be no benefit to the estate. The Trustee should not liquidate property solely for the benefit of secured creditors. In re Williamson, 94 B.R. 958 (Bankr. S.D. Ohio 1988); In re Landreneau, 74 B.R. 12 (Bankr. W.D. La. 1987).

34. As discussed above, the Trustee has determined that the valid liens or encumbrances of Fifth Third aggregate approximately $10.8 million dollars on the APG assets. Therefore the secured debt will be satisfied in full and still yield a not inconsequential sum of money for the estates. The Trustee believes that there may be transfer and recordation taxes, and an Army fifteen percent (15%) profit participation agreement applicable to the conveyance of the leasehold interests in Lots 1 and 2, and the CACI Building. As set forth below, the Trustee proposes that the tax obligations and profit participation agreement be satisfied at closing in accordance with the Letter of Intent. To the extent any valid liens or encumbrances remain unsatisfied at closing, the Trustee proposes to transfer the assets free and clear of any such liens and encumbrances, with any such liens and encumbrances to attach to the proceeds of the sale in like priority as they had attached to the original assets.

35.     Finally, the Trustee proposes that the transaction should move to final settlement as soon as practicable after approval of the Motion and thus asks that the automatic stay of Rule 6004(g) of the Federal Rules of Bankruptcy Procedure not apply to the order issued pursuant to the Motion.

### The Proposed Lease Assignments Satisfy The Applicable Standards for Assignment Of Leases or Executory Contracts Under Section 365

36.     Section 365(a) of the Bankruptcy Code authorizes the trustee to assume an unexpired lease or executory contract subject to the bankruptcy court's approval. 11 U.S.C. § 365(a). Section 365(b) of the Bankruptcy Code requires the trustee to satisfy certain requirements at the time of assumption if a default exists under the subject contract, lease or agreement to be assumed. 11 U.S.C. § 365(b) (requiring the curing of any defaults and provision of adequate assurance as a condition to assumption of an unexpired lease).

37.     Where a trustee is seeking to assign a lease or executory contract, section 365(f) of the Bankruptcy Code requires the trustee to "assume" the lease in accordance with section 365 and requires the assignee of the lease to provide adequate assurance of future performance. 11 U.S.C. § 365(f)(2).

38.     In this circuit, courts apply the business judgment rule to determine whether a debtor's decision to assume an executory contract or unexpired lease should be approved. See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.), 872 F.2d 36, 40 (3d Cir. 1989); NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing the business judgment test as the "traditional" test); In re III Enterprises, Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted) ("Generally, a court will give great deference to a debtor's decision to assume or reject the contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment – a

14

standard which we have concluded many times is not difficult to meet."). So long as assumption of the contract or lease is an exercise of the debtor's sound business judgment and the debtor otherwise satisfies the requirements of section 365(b), the assumption should be approved. See In re Sharon Steel Corp., 872 F.2d at 40.

39. Here, the Trustee has (1) assumed the leasehold interests in Lots 1 and 2, (2) cured any defaults, and (3) provided adequate assurance. The Trustee has also continued to timely perform his obligations under the lease.

40. The Trustee has determined that the value of the leasehold interests in Lots 1 and 2 will diminish if these interests and the rest of the Property are not sold by October 15. SJP has indicated that it will break ground on certain construction projects to be located at the Property on October 15, 2009, if the Court approves the sale. Furthermore, SJP has indicated that it can complete the Lot 1 construction project on the timeline agreeable to Raytheon and therefore to the Army. Furthermore, the Trustee is in the process of winding down the Debtors' real estate development business and therefore has no further need for these leasehold interests. As such, the assignment of these interests in exchange for valuable consideration is certainly an exercise of reasonable business judgment. The transfer of these leases, if approved, will free the Debtors of burdensome obligations and bring more funds into the Debtors' estates for distribution to creditors.

### The Proposed Settlement Agreement Satisfies the Applicable Standards for Settlement Agreements Under Bankruptcy Rule 9019

41. Bankruptcy Rule 9019(a) provides, in relevant part, that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored." In re World Health Alternatives,

15
DB02:8793273.3                                                              068633.1001

Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Cent. Transp. Co., 596 F.2d 1102 (3d Cir. 1979) (holding that "'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims'") (quoting In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

42. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Cent. Transp. Co., 596 F.2d at 1153; see also In re Marvel Entm't Group, Inc., 222 B.R. 243 (D. Del. 1998) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate'") (quoting In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997)).

43. The Court of Appeals for the Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

44. Furthermore, the decision to approve a compromise "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see

also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986) (cited with approval in In re Martin, 91 F.3d at 393). In making its decisions, the bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Bldg. Assocs., 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant & Co., 699 F.2d 599, 608 (2d Cir. 1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities") (internal citations and quotation marks omitted).

45. The Trustee respectfully requests the Court to approve the Settlement as it lies well above the lowest point in the range of litigation possibilities. In addition, as discussed more fully below, each of the applicable Martin factors set forth above weighs in favor of approving the Settlement Agreement. The Court should therefore approve the Settlement pursuant to Bankruptcy Rule 9019.

46. Here, the Parties have entered into a Settlement as part of the sale of the Property. The Settlement provides for SJP to pay an aggregate of $14,900,000 for the Property, in exchange for the Trustee (1) releasing SJP and its affiliates from any and all claims the Trustee, the Debtors and their affiliates have or may have relating to the Assignment of Development Rights, the Master Agreement and the Development Rights, (2) agreeing not to challenge the Assignment of Development Rights, and (3) conveying to GATE APG, LLC, free and clear of all liens and encumbrances, any rights the Trustee and the Debtors have or may have in and to any such Development Rights relating to APG Property. Approval of the Settlement

17
DB02:8793273.3                                                                                          068633.1001

will provide the Trustee and the estates with additional value and relieve the Debtors of the approximately $10.8 million in indebtedness owed to Fifth Third. SJP will be solely responsible for paying the remaining amounts due for the concrete and steel, any obligations existing under the executory contracts for Lots 1 and 2, any and all transfer and recordation taxes payable with respect to the assignments and conveyances to SJP, as well as any amounts of participation fees due and owing to the Army with respect to certain provisions of the Assignment of Development Rights under the Master Agreement. Furthermore, upon delivery of the Settlement to SJP, SJP shall release the Trustee and the estates from any claims relating to the Development Rights.

47. In light of the foregoing, the Trustee submits that the Settlement is in the best interests of the Debtors, their estates and creditors judgment, and that the Settlement will enhance the Trustee's efforts to preserve and maximize estate value. The Settlement therefore represents a compromise between the parties that is fair and equitable and advances the paramount interests of creditors.

48. Accordingly, the Settlement should be approved pursuant to Bankruptcy Rule 9019.

### Relief Under Bankruptcy Rule 6004(h) is Appropriate

49. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Trustee requests that the Order be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6004(h) be waived. The Advisory Committee notes on Rule 6004(h) expressly state that "[t]he court may, in its discretion, order that Rule 6004(h) is not applicable so that the property may be used, sold, or leased immediately . . . ." Advisory Committee Notes to Bankruptcy Rule 6004(h). Such an order should be granted

upon a showing that there is a sufficient business need to close the transaction within the 10-day period. Hower v. Molding Sys. Engineering Corp., 445 F.3d 935, 938 (7th Cir. 2006); In re Perry Hollow Mgmt. Co., Inc., 297 F.3d 34, 41 (1st Cir. 2002).

50. The Proposed Order provides for a waiver of the 10-day stay under Bankruptcy Rule 6004(h). The Trustee is in a situation where in order to maintain the Property's value, the sale needs to be completed by October 15, 2009. As discussed above, SJP has indicated that it will break ground on certain construction projects to be located at the Property on October 15, 2009, if the Court approves the sale. Furthermore, SJP has indicated that it can complete the construction project on schedule. The Army is comfortable with this outcome. Due to these time constraints, it is necessary to consummate the sale as soon as possible. Waiving the 10-day stay period under Bankruptcy Rule 6004(h) will facilitate the sale process and mitigate the risk of a substantial devaluation following a failure to sell the Property. Therefore, the Trustee respectfully submits that a sufficient business need has been demonstrated to waive the 10-day stay period.

### Relief Under Bankruptcy Rule 6006(d) is Appropriate

51. Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." The Trustee requests that the Order be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6006(d) be waived. The Proposed Order provides for such a waiver.

52. The Trustee submits that there is sufficient justification for a waiver of the 10-day stay of an order approving this Motion. As discussed above, SJP has indicated that it will break ground on certain construction projects to be located at the Property on October 15, 2009,

19

if the Court approves the sale. Due to these time constraints, it is necessary to consummate the sale as soon as possible. Waiving the 10-day stay period under Bankruptcy Rule 6006(d) will facilitate the sale process and mitigate the risk of a substantial devaluation following a failure to sell the Property. Therefore, the Trustee respectfully submits that a sufficient business need has been demonstrated to waive the 10-day stay period.

### Notice

53.   Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware and (b) the United States of America, (c) Fifth Third Bank, (d) all counterparties to contracts proposed to be transferred, (e) SJP, (f) Raytheon, and (g) all other parties who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules, in accordance with Del. Bankr. L.R. 2002-1(b).

WHEREFORE, the Trustee respectfully requests the Court to enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and granting such other and further relief as the Court deems just.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Dated: 8 October 2009

/s/ John D. McLaughlin, Jr.
John D. McLaughlin, Jr. (No. 4123)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
E-mail: jmclaughlin@ycst.com

Co-Counsel to the Trustee

20
DB02:8793273.3                                                                                           068633.1001