IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| OPUS EAST, L.L.C., | ) | Case No. 09-12261 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

Sale Procedures Response Deadline: January 27, 2010
at 4:00 p.m. (ET)
Sale Procedures Hearing Date: February 3, 2010
at 2:00 p.m. (ET)
Sale Response Deadline: February 15, 2010 at 4:00 p.m. (ET)
Sale Hearing Date: February 17, 2010 at 2:00 p.m. (ET)

**MOTION OF THE CHAPTER 7 TRUSTEE, PURSUANT TO SECTIONS 363, 365, AND 725 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9014, FOR (I) AUTHORIZATION TO SELL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES, SUBJECT OT HIGHER AND BETTER OFFERS, (II) AUTHORIZATION TO ASSIGN LEASES OF NON-RESIDENTIAL REAL PROPERTY, (III) AUTHORIZATION AND APPROVAL OF THE REAL ESTATE SALES CONTRACT, (IV) AUTHORIZATION TO APPROVE SALE PROCEDURES, AND (V) GRANTING RELATED RELIEF**

Jeoffrey L. Burtch, as the duly appointed Chapter 7 trustee (the "Trustee") for the estates of Opus East, L.L.C. ("Opus East"), 100 M ST. SE, L.L.C., Mercer Corporate Center, L.L.C., Apple Valley II, L.L.C., APG I, L.L.C. ("APG I") and APG II, L.L.C. ("APG II"), the debtors in the above-captioned cases (the "Debtors"), respectfully represents as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion (the "Motion") is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein are sections 105, 363 and 365 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

2. On July 1, 2009 (the "Petition Date"), voluntary petitions were filed by the Debtors for relief pursuant to chapter 7 of the Bankruptcy Code.

3. The United States Trustee appointed Jeoffrey L. Burtch, Esq. as the chapter 7 trustee pursuant to section 701 of the Bankruptcy Code.

4. On August 24, 2009, the Court entered an order authorizing the joint administration of the Debtors' cases for procedural purposes only [Docket No. 73].

5. The Debtor Opus East is the owner in fee simple of that certain improved 2.48 +/- acre parcel of land located in Springfield, Fairfax County, Virginia identified as Land Parcel No. 0991 01 0022 (the "Land"), together with any and all appurtenances, rights, privileges and easements, if any, benefiting, belonging or pertaining thereto, and any right, title and interest if any in and to the land lying in the bed of any street, road or highway (open or proposed) in front of, adjoining or servicing the Land, and commonly known as 7800 Backlick Road, Springfield, Virginia, (the Land, together with the foregoing, collectively referred to as the "Real Property").

6. The Real Property is improved with an approximately 20,000 square foot building (the "Building") utilized by the current tenants, EEE of Fairfax, LLC and EEE Auto Sales, Inc., (collectively "Tenant") as a car dealership showroom, together with approximately 250 car parking spaces (collectively, with the Building all other betterments and improvements located on the Real Property, the "Improvements"). The Real Property and the Improvements are hereinafter collectively referred to as the "Property".

7. Wachovia Bank, National Association, a national banking association ("Wachovia") is the secured lender with respect to the Property. Trustee calculates the

2

DB02:9077342.3                                                                                              068633.1001

indebtedness owned to Wachovia to be approximately Three Million One Hundred Thousand and No/100 Dollars ($3,100,000.00) pursuant to that certain Deed of Trust between Opus East, L.L.C. and TRSTE, Inc., Trustee, and Wachovia in the original principal amount of $3,100,000.00 dated September 14, 2007 and recorded September 17, 2007.

8. As of the Petition Date, the Property was leased to Tenant pursuant to that certain lease agreement between Debtor Opus East and Tenant dated November 26, 2007, as amended by that certain First Amendment to Lease Agreement dated December 30, 2008 (as amended, the "Original Lease"), with an initial expiration date of November 20, 2009, subject to Tenant's right to extend the term in accordance with the terms, covenants and conditions contained in the Original Lease. The Original Lease is secured by the personal guaranty of Enayet Rashid dated November 26, 2007 appended to the Original Lease as Exhibit "E" (the "Guaranty").

9. Tenant failed to exercise its right to extend the term of the Original Lease in accordance with its terms, covenants and conditions.

10. In order to provide Tenant with sufficient time to relocate its business, the Trustee agreed to extend the term of the Original Lease until March 31, 2010, with an automatic month-to-month renewal of the term thereafter, subject, however, to either party's right to terminate the Original Lease upon at least one-hundred twenty (120) days prior written notice to the other party, subject to and in accordance with the terms of that certain Second Amendment to Lease Agreement entered into by the Trustee and Tenant dated November 1, 2009 (the "Second Amendment"), together with the Original Lease and the Guaranty, hereinafter referred to as the "Lease".

11. The Debtor Opus East also hold ownership interests in the personal property described as follows, subject to any amounts due and owing to counterparties in connection therewith (the "Personal Property"): (i) all appliances, fixtures, equipment, machinery, furniture, carpet, drapes and other personal property, if any, owned by the Debtor Opus East and currently located on or about the Real Property and Improvements, expressly excepting any such personal property owned by any tenant, including, but not limited to, the Tenant (as defined above), and, to the extent assignable, (ii) all right, title and interest of the Debtor Opus East, if any, in and to all development plans, specifications, as-builts, photographs, CAD drawings, and mechanical drawings and plans, title reports, leases, land leases, surveys, legal descriptions, environmental studies, property insurance appraisals and reports, zoning certifications, easements, operating costs, rights-of-way and liens on or relating to the Property, and any other reports, studies, plans or information in the Trustee's possession, if any, relating to the Property.

12. Since the Petition Date, the Trustee has been working to market the Property cooperatively with several interested parties who are aware that the Property is available for sale, including COPT Acquisitions, Inc., a Delaware corporation, a subsidiary of Corporate Office Properties Trust ("COPT" or "Buyer"), an active but ultimately unsuccessful bidder in a prior proceeding in this bankruptcy for the Debtor's real property located in Aberdeen, Maryland.

13. The Trustee has also received inquiries from other parties who have expressed an interest in purchasing the Property and has received two (2) Letters of Intent from potential purchasers, setting forth proposed deal terms for the sale of the Property, including

COPT. The highest offer to purchase was received from COPT in the amount of Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000).

14. The Debtor Opus East has entered into a Real Estate Purchase and Sale Agreement dated (the "Agreement") with COPT for the sale of the Property free and clear of all claims, liens and encumbrances, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference as if set forth in full herein. The Agreement contemplates that COPT will serve as a stalking horse bidder for the Property and receive, among other things, a break fee and reimbursement of certain expenses as more fully set forth in the Agreement and Paragraph 19 below.

15. The Trustee further desires to maximize the value of the Property to the Debtor Opus East's estate and to set the fair market price for the Property by holding a public auction sale of the Property, which the Trustee believes will yield the highest and best value to Debtor Opus East's estate from the Property. .

16. By this motion, the Trustee seeks the following pursuant to sections 363(b), 365(f) and 725 of the Bankruptcy Code: (i) authorization to sell the Property free and clear of all liens and encumbrances, subject to higher and better offers; (ii) authorization to assign leases of non-residential real property in connection with the sale of the Property; (iii) approval of the Agreement, including the stalking horse provision and protections provided to COPT therein; (iv) approval of proposed sale procedures; and (v) such other relief as may be necessary to effectuate the sale of the Property in accordance with the Agreement.

### Description of Property to Be Sold

17. Pursuant to the Agreement, the Trustee seeks to sell and otherwise transfer its interest in the Property, which includes (i) the Building; (ii) the Improvements, (iii) the Real

Property, (iv) the leasehold interests in the Real Property (the Lease), and (v) all of the Debtor's rights in the Personal Property .

## The Agreement

18. In summary, COPT has tendered an offer to the Trustee to purchase all of the Debtor's rights, title and interest in the Property for a price of Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000) (the "Purchase Price"), subject to certain adjustments for deposit amounts previously paid by COPT in the amount of Five Hundred Thousand and No/100 Dollars ($500,000), which offer the Trustee has agreed to treat as the "stalking horse" bid pursuant to the terms of the Agreement.

19. The Agreement contemplates, among other things, that if COPT is not the successful bidder for the Property, that COPT will be paid a "break-up-fee" equal to 2.25% of the purchase price (the "Break-Up Fee"), in addition to reasonable expenses incurred by COPT and arising in connection with the Agreement and the sale, including but not limited to the due diligence, examination of title, the negotiation of the Agreement and other activities of COPT and others acting on its behalf in amount not to exceed $150,000 in connection with the sale of the Property (the "Expense Reimbursement"). The Agreement contemplates that the Expense Reimbursement shall be treated as a 507(a)(1) administrative expense claim in the Bankruptcy proceeding and to be paid to COPT upon closing of another successful bidder's bid for the Property.

20. COPT is not an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(13) and the Agreement was negotiated without collusion, at arm's length and in good faith by both parties.

21. Notwithstanding the speed with which this matter has been pursued, the Trustee believes and therefore avers that, by entertaining bids for the Property, in addition to exploring the many inquiries and offers received by the Trustee, resulting in the Agreement with COPT, that the Trustee will yield the highest cash recovery for the estates and shall act as a "market-check" to ensure that a greater return in not possible through an alternate transaction..

22. Pursuant to the Agreement, the Trustee has agreed to seek Bankruptcy Court approval of the Sale Procedures attached hereto and made a part hereof as **Exhibit B**. If a Qualified Bid (as defined in the Sales Procedures) is received by the Bid Deadline (defined in the Sales Procedures), the Trustee shall proceed with an Auction (defined in the Sales Procedures) of the Property on such terms and conditions as are substantially set forth in the Agreement and the Sale Procedures. However, if the Trustee concludes that there are no Qualified Bidders, or if the Trustee does not receive a Qualified Bid by the Bid Deadline, or if the Trustee otherwise determines that the interests of the Debtor's estates are better-satisfied through consummating the Agreement with COPT, the Trustee shall proceed with the sale of the Property to COPT pursuant to the terms of the Agreement without seeking any further relief from the Bankruptcy Court.

23. Accordingly, the Trustee requests the entry of an order, substantially in the form attached hereto as **Exhibit C** (the "Sale Order"), which would:

    (a) Pursuant to Bankruptcy Code sections 363(b), 365(f), and 725, approve the terms and conditions of the Agreement, including the proposed sale of the Property to COPT and assignment of the Lease, subject to higher and better offers; and

(b) Pursuant to 11 U.S.C. § 363(f), make the conveyance free and clear of all liens and encumbrances of any nature whatsoever, with any liens or encumbrances to attach to the proceeds of sale to the same extent and priority that they had against the Property being conveyed.

24. Accordingly, the Trustee further requests the entry of an order, substantially in the form attached hereto as **Exhibit D** (the "Sale Procedures Order"), which would

(a) Approve the Sales Procedures;

(b) Approve the Agreement as the "stalking horse bid" and COPT as the "stalking horse bidder";

(c) Determine that the transaction contemplated by the Agreement is undertaken by the Buyer in good faith, and as such the Buyer is entitled to the full protections contemplated in section 363(m) of the Bankruptcy Code; and

(d) Approve payment of the Break-Up-Fee, Expense Reimbursement and return of the Deposit paid under the Agreement upon consummation of an Alternate Transaction as provided for in the Agreement.

## The Proposed Sale Satisfies The Applicable
## Standards For Sales Of Property Under Section 363

25. The Trustee respectfully submits that the proposed sale of the Property satisfies the requirements of section 363 of the Bankruptcy Code. Under section 363(b) of the Bankruptcy Code, "[t]he trustee, after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

26. Where a trustee seeks to use assets of the estate pursuant to section 363 of the Bankruptcy Code, the trustee's good faith business judgment regarding the proposed transaction should not be disturbed absent a showing that the transaction constitutes an abuse of discretion or is contrary to the interests of the creditors. In re Thrifty Liquors, Inc., 26 B.R. 26, 28 (Bankr. D. Mass. 1982); In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3rd Cir. 1986). The court in Abbots Dairies stressed two factors which a trustee must prove in order to obtain court authorization of a use of property of the estate pursuant to section 363. First, the transaction must result from the exercise of the trustee's sound business judgment and second, the trustee must be acting in "good faith." Id. at 150. For reasons set forth herein, the Trustee believes that (1) entry into the Agreement proposed herein will inure to the benefit of the Debtor's estate and creditors, and (2) the Trustee is acting in good faith.

## Sale Procedures

27. The Trustee proposes the Sale Procedures set forth on **Exhibit B** attached hereto and made a part hereof, which are incorporated herein by reference, in an attempt to maximize the realizable value of the Property for the benefit of the Debtor's estate, creditors and other interested parties. The Sale Procedures contemplate an Auction process pursuant to which bids will be subject to higher or better offers and which establishes a minimum bid equal to the Purchase Price set forth in the Agreement, plus payment of the Break-Up-Fee and Expense

Reimbursement per the stalking horse provisions contained in the Agreement with COPT. As described more fully in the Sale Procedures, only Qualified Bidders who timely submit Qualified Bids may be eligible to participate in the Auction.

28. Sale procedures that enhance competitive bidding in connection with a proposed sale of estate property are consistent with the goal of maximizing the value of the Debtor's assets and are therefore appropriate in the context of bankruptcy sales. See In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 535-37 (3d Cir. 1999); In re Integrated Res., Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992) (such procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); In re Fin. News Network, Inc., 126 B.R. 152, 156 (S.D.N.Y. 1991) (enforcement of "court-imposed rules for the disposition of assets [is intended] to provide an adequate basis for comparison of offers, and to provide for a fair and efficient resolution of bankrupt estates."

29. The Trustee believes and therefore avers that the Sale Procedures will insure that the Property is sold for the highest or otherwise best possible purchase price under the circumstances, and the by subjecting the Agreement and Purchase Price agreed to between the Trustee and COPT to "market testing" and permitting prospective purchaser to bid on the Property, the Trustee will ensure that the Property will be sold for the highest or otherwise best possible purchase price under the circumstances.

**The Trustee Intends to Sell the Assets in a Manner
Consistent with His Obligations under Section 725**

30. Section 725 of the Bankruptcy Code states "[t]he trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest,

such as a lien, and that has not been disposed of under another section of this title." Thus, section 725 specifically contemplates that the Trustee may sell property of the estate encumbered by a lien. Nevertheless, the trustee should not sell property under section 725 when all the equity is encumbered or if there will be no benefit to the estate. The Trustee should not liquidate property solely for the benefit of secured creditors. In re Williamson, 94 B.R. 958 (Bankr. S.D. Ohio 1988); In re Landreneau, 74 B.R. 12 (Bankr. W.D. La. 1987).

31. As discussed above, the Trustee has determined that the valid liens or encumbrances of Wachovia aggregate approximately $3.1 million dollars on the Opus East assets. Therefore the secured debt will be satisfied in full and still yield a not inconsequential sum of money for the estates. The Trustee believes that there may be adjustments and pro-rations of taxes, assessments and other charges which the Trustee proposes be satisfied in accordance with the Agreement, which provides that the purchaser thereunder pay all recordation and transfer taxes imposed in connection with the sale of the Property, including all of the Grantor's Tax imposed on the conveyance. To the extent any valid liens or encumbrances remain unsatisfied at closing, the Trustee proposes to transfer the assets free and clear of any such liens and encumbrances, with any such liens and encumbrances to attach to the proceeds of the sale in like priority as they had attached to the original assets.

32. Finally, the Trustee proposes that the transaction should move to final settlement as soon as practicable after approval of the Motion and thus asks that the automatic stay of Rule 6004(g) of the Federal Rules of Bankruptcy Procedure not apply to the order issued pursuant to the Motion.

## The Proposed Lease Assignment Satisfies The Applicable Standards for Assignment Of Leases or Executory Contracts Under Section 365

33. Section 365(a) of the Bankruptcy Code authorizes the trustee to assume an unexpired lease or executory contract subject to the bankruptcy court's approval. 11 U.S.C. § 365(a). Section 365(b) of the Bankruptcy Code requires the trustee to satisfy certain requirements at the time of assumption if a default exists under the subject contract, lease or agreement to be assumed. 11 U.S.C. § 365(b) (requiring the curing of any defaults and provision of adequate assurance as a condition to assumption of an unexpired lease).

34. Where a trustee is seeking to assign a lease or executory contract, section 365(f) of the Bankruptcy Code requires the trustee to "assume" the lease in accordance with section 365 and requires the assignee of the lease to provide adequate assurance of future performance. 11 U.S.C. § 365(f)(2).

35. In this circuit, courts apply the business judgment rule to determine whether a debtor's decision to assume an executory contract or unexpired lease should be approved. See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.), 872 F.2d 36, 40 (3d Cir. 1989); NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing the business judgment test as the "traditional" test); In re III Enterprises, Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted) ("Generally, a court will give great deference to a debtor's decision to assume or reject the contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment – a standard which we have concluded many times is not difficult to meet."). So long as assumption of the contract or lease is an exercise of the debtor's sound business judgment and the debtor otherwise satisfies the requirements of section 365(b), the assumption should be approved. See In re Sharon Steel Corp., 872 F.2d at 40.

36. Here, Tenant's lease with the Trustee expired during the pendency of this bankruptcy proceeding. In order to provide Tenant with sufficient time to relocate its business, the Trustee agreed to extend the term of the Original Lease until March 31, 2010 pursuant to the Second Amendment, with an automatic month-to-month renewal of the term thereafter, subject, however, to either parties right to terminate the Original Lease upon at least one-hundred twenty (120) days prior written notice to the other party. In exchange for extending the term of the Original Lease, Trustee has collected and continues to collect monthly rental income from the Property in excess of $19,000.00 per month for the benefit of the Debtor Opus East's bankruptcy estate. Both the Trustee and Tenant continue to timely perform their respective obligations under the Lease.

37. The Trustee proposes that the Lease be assigned to COPT, or the successful bidder for the Property, pursuant to the terms of the Agreement. Since the Trustee is in the process of winding down the Debtor's real estate development business and is selling the Property the Trustee has no further need for any leasehold interests in the Property. As such, the assignment of the Lease in exchange for valuable consideration in connection with the concurrent sale of the Property is certainly an exercise of reasonable business judgment. The transfer of the Lease, if approved, will free the Debtor of burdensome obligations and bring more funds into the Debtor's estate for distribution to creditors.

### Relief Under Bankruptcy Rule 6004(h) is Appropriate

38. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Trustee requests that the Order be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6004(h) be waived. The Advisory

13
DB02:9077342.3                                                                                                                    068633.1001

Committee notes on Rule 6004(h) expressly state that "[t]he court may, in its discretion, order that Rule 6004(h) is not applicable so that the property may be used, sold, or leased immediately . . . ." Advisory Committee Notes to Bankruptcy Rule 6004(h). Such an order should be granted upon a showing that there is a sufficient business need to close the transaction within the 10-day period. Hower v. Molding Sys. Engineering Corp., 445 F.3d 935, 938 (7th Cir. 2006); In re Perry Hollow Mgmt. Co., Inc., 297 F.3d 34, 41 (1st Cir. 2002).

39. The proposed Sale Procedures Order and Sale Order each provide for a waiver of the 10-day stay under Bankruptcy Rule 6004(h). The Trustee proposes that the transaction contemplated by the Agreement move to final settlement as soon as practicable and thus asks that the automatic stay of Bankruptcy Rule 6004(h) not apply to either the Sale Procedures Order or the Sale Order issued pursuant to the Motion. The Agreement provides that, in the event the "Sale Order" date does not occur on or before February 22, 2010 (the "Outside Approval Date"), COPT shall have the right to terminate the Agreement. Waiving the 10-day stay period under Bankruptcy Rule 6004(h) will facilitate the sale process and mitigate the risk of a substantial devaluation following a failure to sell the Property, and will save the Debtor's estate additional expenses and carrying costs associated with owning and maintaining the Property. Therefore, the Trustee respectfully submits that a sufficient business need has been demonstrated to waive the 10-day stay period.

### Relief Under Bankruptcy Rule 6006(d) is Appropriate

40. Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." The Trustee requests that

14
DB02:9077342.3                                                                                                               068633.1001

the Sale Order and Sale Procedures Order be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6006(d) be waived. The proposed orders provide for such a waiver.

41. The Trustee submits that there is sufficient justification for a waiver of the 10-day stay of an order approving this Motion. As discussed above, the Agreement provides that, in the event the "Sale Order" date does not occur on or before February 22, 2010 (the "Outside Approval Date"), COPT shall have the right to terminate the Agreement. The Trustee respectfully submits that waiving the 10-day stay period under Bankruptcy Rule 6006(d) to allow the assignment of the Lease to occur concurrently with the sale of the Property will facilitate the sale process and mitigate the risk of a substantial devaluation following a failure to sell the Property, and will save the Debtor's estate additional expenses and carrying costs associated with owning and maintaining the Property. Therefore, the Trustee respectfully submits that a sufficient business need has been demonstrated to waive the 10-day stay period.

## Notice

42. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware, (b) the United States of America, (c) all counterparties to contracts proposed to be transferred, (d) Wachovia, (e) COPT, (f) all interested parties identified on the special service list attached hereto, and (g) all other parties who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules, in accordance with Del. Bankr. L.R. 2002-1(b).

(Remainder of page intentionally left blank.)

WHEREFORE, the Trustee respectfully requests the Court to enter orders, substantially in the form attached hereto as <u>Exhibit C</u> and <u>Exhibit D</u>, granting the relief requested herein and granting such other and further relief as the Court deems just.

Dated: 8 Jan 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ John D. McLaughlin, Jr.*
John D. McLaughlin, Jr. (No. 4123)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6634
Facsimile: (302) 576-3316
Email: jmclaughlin@ycst.com

Co-Counsel to the Trustee